**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**


| | | |
|---|---|---|
| **PAMELA JANE MATHENEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:14-cv-01572** |
| **v.** | ) | |
| | ) | **Judge Trauger** |
| **NANCY BERRYHILL,**[1] | ) | **Magistrate Judge Newbern** |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |


## MEMORANDUM

Before the court is plaintiff Pamela Jane Matheney's Motion for Judgment on the Administrative Record ("Motion") (Docket No. 9), filed with a Memorandum in Support (Docket No. 9-1). The defendant Commissioner of Social Security filed a Response in Opposition (Docket No. 14), and the plaintiff filed a Reply (Docket No. 16). On January 13, 2017, this case was referred to a magistrate judge. (Docket No. 18.)

To avoid further delay in the resolution of this matter, the court will vacate the referral to the magistrate judge. In addition, upon consideration of the parties' filings and the transcript of the administrative record (Docket No. 5),[2] and for the reasons given below, the court will deny the plaintiff's Motion and affirm the Commissioner's decision.

## I. Introduction

Matheney filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act on September 20, 2010, alleging a disability onset date of May 17, 2005.

---

[1] Nancy Berryhill became Acting Commissioner of Social Security on January 23, 2017.

[2] Referenced hereinafter by page number(s) following the abbreviation "Tr."

(Tr. 12.) Matheney's claim was denied at the initial and reconsideration stages of state agency review. Matheney subsequently requested *de novo* review of her case by an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing on November 28, 2012, at which the plaintiff was represented by counsel. The plaintiff and an impartial vocation expert ("VE") both testified. (Tr. 24–80.) At the conclusion of the hearing, the matter was taken under advisement until February 13, 2013, when the ALJ issued a written decision finding Matheney not disabled. (Tr. 9–23.) That decision contains the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2005.

2. The claimant did not engaged in substantial gainful activity during the period from her alleged onset date of May 17, 2005 through her date last insured of December 31, 2005 (20 C.F.R. 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: valvular cardiomyopathy and obesity (20 C.F.R. 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, [the ALJ finds] that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except that she should have avoided concentrated exposure to vibrations and electromagnetic fields.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. 404.1565).

7. The claimant was born on May 27, 1964 and was 41 years old, which is defined as a younger individual age 18-44, on the date last insured (20 C.F.R. 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P,

Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 17, 2005, the alleged onset date, through December 31, 2005, the date last insured (20 C.F.R. 404.1520(g)).

(Tr. 14–15, 17–18.)

On June 16, 2014, the Appeals Council denied Matheney's request for review of the ALJ's decision (Tr. 1–6), thereby rendering that decision the final decision of the Social Security Administration ("SSA"). This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g).

## II.     Review of the Record

The following summary of the relevant medical evidence is taken from the ALJ's decision:

> [T]he claimant presented in May 2005 with moderate to severe mitral regurgitation. (Exhibit 1F). Severe aortic valve disease was noted as well. The claimant underwent coronary angiogram and right heart catheterization. Thereafter, she underwent aortic valve replacement. On follow up in August 2005, the claimant was noted to be doing remarkably well. She had no symptoms of limiting dyspnea and was walking at the gym and riding an elliptical machine. She had no lower extremity edema and had only minimal symptoms for orthostasis. Dr. Thomas McRae recommended increasing the amount [of] the claimant's Coreg medication. ([S]ee Exhibit 1F at page 6, 2F at pages 10, 13, 16, and pages 35–38).

> In October 2005, Dr. McRae indicated that the claimant continued to do very well. (Exhibit 2F). She continued to report only minimal symptoms of dyspnea with exertion. In November 2005, the claimant denied experiencing dizziness or light-headedness. Her blood pressure was stable.

(Tr. 15–16.)

### III.    Conclusions of Law

### A.  Standard of Review

This court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016) (citation omitted).

Accordingly, this court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller*, 811 F.3d at 833 (quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014)).

### B.  The Five-Step Inquiry

The claimant bears the ultimate burden of establishing entitlement to benefits by proving

his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The SSA considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1. A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. A claimant who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart B of the Regulations. Claimants with lesser impairments proceed to step four.

4. A claimant who can perform work that he has done in the past will not be found to be disabled.

5. If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity." *Kepke v. Comm'r of Soc. Sec.*,

636 F. App'x 625, 628 (6th Cir. 2016) (citation and internal quotation marks omitted).

The SSA can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2); *Wright v. Massanari*, 321 F.3d 611, 615–16 (6th Cir. 2003) ("[W]here the characteristics of the claimant exactly match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exist for the person or whether that person is disabled."). Otherwise, the grids only function as an "analytical framework" for the disability determination. *Anderson*, 406 F. App'x at 35. Where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through a VE's testimony. *Anderson*, 406 F. App'x at 35; *see Wright*, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the SSA must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

## C.  Plaintiff's Statement of Errors

### 1.  Treating Physician

Matheney first argues that the ALJ erred by improperly weighing the opinion of her

treating cardiologist, Dr. McRae. (Docket No. 9-1, at 6.) An ALJ must give a treating source's opinion controlling weight "if he finds the opinion 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)). The ALJ "is not bound by a treating source's opinions, especially when there is substantial medical evidence to the contrary." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). That said, the ALJ is required to provide "good reasons" for discounting the weight given to a treating source's opinion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting SSR 96-2p, 1996 WL 374188 (July 2, 1996)).

Here, the ALJ properly discounted Dr. McRae's opinion. In a letter dated December 5, 2012, Dr. McRae opined that after undergoing aortic valve replacement in May 2005, Matheney was "subsequently unable to work for the year following that [procedure] due to recovery and heart failure symptoms." (Tr. 484.) The ALJ stated that he

> accorded little weight to Dr. McRae's recent opinion in this regard as it is inconsistent with his own contemporaneous treatment notes and recorded findings, which demonstrate that the claimant recovered and improved much sooner than 1 year after her aortic valve replacement (see Exhibit 2F). Moreover, Dr. McRae's notes from 2005 and 2006 do not mention any memory loss or complaints of short-term memory problems, which the claimant now alleged in her recent hearing testimony.

(Tr. 16.) Matheney contends that the ALJ was incorrect when he stated that Dr. McRae's opinion was inconsistent with the record because "a review of the multiple echocardiograms and other

tests produced significantly low ejection fractions ranging from 20–40%." (Docket No. 9-1, at 8.) This point is without merit since it omits both the context of the test results and Dr. McRae's contemporaneous interpretation of them.

The first of the three echocardiograms cited by Matheney was performed on May 18, 2005, one week prior to her aortic valve replacement and placement of a left ventricular pacing lead, and showed moderate to severe mitral regurgitation and an estimated ejection fraction of 20–25%. (Tr. 244–45.) The second was performed on May 26, 2005, the day after her procedure. (Tr. 240.) It showed that her left ventricle was moderately to severely dilated, with an estimated injection fraction of 25%, and she still had mild to moderate mitral valve regurgitation and severe aortic regurgitation. (Tr. 240.) By July 13, 2005, however, Dr. McRae's treatment notes state that she was doing well and "ha[d] had no symptoms of heart failure." (Tr. 280.) Similarly, on August 31, 2005 Dr. McRae reported that Matheney was doing "remarkably well" and was "not currently experiencing symptoms of heart failure," and he gave her clearance to exercise. (Tr. 325, 327.) The third echocardiogram, performed October 24, 2005, showed that her ejection fraction had increased to an estimated 40%, her left ventricle was mildly enlarged, and mitral regurgitation and aortic insufficiency were also mild. (Tr. 282.) Dr. McRae examined Matheney two days later and reported that she continued to do well and that he was "very impressed that her ejection fraction [had] improved so robustly." (Tr. 278–79.) He also noted that she was exercising using an elliptical machine, exercise bike, and light weights, was walking for 55 minutes five days a week, and had minimal symptoms of dyspnea with exertion, and he found no significant cardiac symptoms upon examination. (Tr. 278–79.) Further treatment notes during the relevant time period show continued improvement. (Tr. 321.) These records directly contradict Dr. McRae's 2012 letter, which claimed that Matheney was unable to work the year following

her surgery "due to recovery and heart failure symptoms." (Tr. 484.)

The Sixth Circuit has held that "it is proper for an ALJ to give a treating physician's opinion less-than-controlling weight where a claimant is 'unable to direct this court to any portion of the [treating physician's] records which support' the treating physician's ultimate opinion." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 507 (6th Cir. 2014) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997)). In her Motion, Matheney fails to cite to any of Dr. McRae's treatment records that would support his ultimate opinion. As stated above, Dr. McRae's claim that Matheney suffered from impairments of disabling severity is, as the ALJ properly found, inconsistent with the detailed clinical and diagnostic evidence in her reports. This was a valid reason for the ALJ not to accept Dr. McRae's opinion. *Accord King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Matheney also takes issue with the fact that the ALJ specifically asked her and her counsel "to obtain a letter from Dr. McRae stating that [Matheney] was unable to work for twelve months following her valve replacement," and then gave Dr. McRae's opinion little weight. (Docket No. 9-1, at 8.) This argument is not well received. First, it is quite simply untrue. The ALJ asked them if they "would be able to get Dr. McRae to write a brief letter to me or a brief note to me explaining his opinion as to her ability." (Tr. 70.) This question came after Matheney and her husband testified that they had told Dr. McRae about certain symptoms, such as memory loss, lightheadedness, dizziness, and fatigue following her surgery. (Tr. 64, 69–70.) The ALJ repeatedly inquired about Dr. McRae's treatment notes, which, contradictory to the hearing testimony, all indicated that Matheney was doing well in the year following her surgery and showed no symptoms of heart failure. The letter requested by the ALJ was thus meant to clarify Dr. McRae's opinion of her functional abilities. Second, the court is unsure how the

ALJ's asking for such a letter in any way triggered an obligation for him to accord Dr. McRae's opinion controlling weight, and Matheney cites no support for this contention. Finally, the ALJ had a duty to make reasonable efforts to develop the medical record for the relevant period. 20 C.F.R. § 404.1512(d)(2).

As stated above, the ALJ's decision to accord little weight to Dr. McRae's opinion is supported by substantial evidence. The ALJ's requesting a letter does not alter this finding.

### 2. *Non-Treating Physicians*

Next, Matheney contends that the ALJ erred by deferring to the opinions of non-treating physicians over the opinion of her treating physician in determining her RFC. (Docket 9-1, at 8.) Dr. Montague-Brown, a nonexamining State physician, opined that during the relevant period, Matheney could lift twenty pounds occasionally and ten pounds frequently; stand, walk, or sit for six hours in an eight-hour workday; and should avoid concentrated exposure to vibration and hazards such as machinery and heights. (Tr. 411, 414.) She found no postural or manipulative limitations, or limitations in pushing or pulling. (Tr. 411–13.) These findings were affirmed upon reconsideration by a second State agency physician. (Tr. 442.)

Matheney cites no factual support for her claim that the ALJ applied a double standard when assigning weight to medical source opinions and that he contradicted himself in his decision. Instead she seems to assert that it was an error *per se* for the ALJ to accord greater weight to a nonexamining physician's opinion than to the opinion of her treating physician. Relying on *Gayheart v. Commissioner of Social Security*, 710 F.3d 365 (6th Cir. 2013), Matheney asserts that the ALJ's analysis should be questioned since he purportedly scrutinized Dr. McRae's opinion more closely than that of the consultative doctor. Her characterization of the law is correct yet, as applied to these facts, unavailing.

First, where, as here, the ALJ properly finds that the treating doctor's opinion is plainly contradicted by his own treatment notes, while the State agency doctor's opinion is well supported by the weight of the evidence of record, the latter opinion is entitled to more weight pursuant to the Regulations, agency policy, and Sixth Circuit case law. *Accord Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004); 20 C.F.R. § 404.1527(e)(2)(i); SSR 96-6p, 1996 WL 374180 (July 2, 1996). Second, contrary to Matheney's argument, the ALJ only adopted those findings of the State agency physicians that he determined were supported by the record. The SSA interprets the regulations as establishing that, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight if their opinions are supported by the evidence." SSR 96-6p, 1996 WL 374180, at *5. The Sixth Circuit has held the same. *See Hoskins*, 106 F. App'x at 415 ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence." (citing 20 C.F.R. § 404.1527(f)(2)(i)). Indeed, despite according Dr. Montague-Brown's opinion great weight, the ALJ still found Matheney's impairments to be more limiting and adjusted the RFC accordingly. (Tr. 16.) The court therefore finds that the ALJ did not err in his weighing of the medical source opinions.

### 3. Nonsevere Impairments

Matheney's third argument is that the ALJ erred by failing to classify her aortic and mitral valve disease as severe. (Docket 9-1, at 10.) The court disagrees.

At step two of the sequential evaluation process, "the ALJ must find that the claimant has a severe impairment or impairments" to be disabled. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985); *see* 20 C.F.R. § 404.1520(a)(4)(h). "[A]n impairment is

considered 'severe' unless 'the [claimant's] impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 324 (6th Cir. 2015) (quoting SSR 85-28, 1985 WL 56856, at *3 (1985)). Thus, "the claimant's burden of establishing a 'severe' impairment during the second step of the disability determination process is a '*de minimis* hurdle.'" *Id.* at 324–25 (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "Under [this] prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* at 325 (quoting *Higgs*, 880 F.2d at 862).

"[O]nce any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)); 20 C.F.R. § 416.945(a)(2). Therefore, it is "legally irrelevant" that an impairment is determined to be nonsevere if the ALJ finds other severe impairments. *See McGlothin*, 299 F. App'x at 522 (reasoning that "because the ALJ found that [plaintiff] has some severe impairments, he proceeded to complete steps three through five of the analysis. It then became "legally irrelevant" that her other impairments were determined to be not severe") (quoting *Higgs*, 880 F.2d at 862)). As explained by the Sixth Circuit,

> [a]n ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ determines that a claimant has at least one other severe impairment and continues with the remaining steps of the disability evaluation. This rule is predicated on the notion that the ALJ 'properly could consider claimant's [non-severe impairments] in determining whether claimant retained sufficient residual functional capacity to allow [him] to perform substantial gainful activity.'

*Winn*, 615 F. App'x at 326 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240,

244 (6th Cir. 1987)); *see also Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (holding that an ALJ's failure to find an impairment severe at step two is not reversible error if the ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination."); 20 C.F.R. § 404.1523 (stating that when making a disability determination, the Regulations require that, if one severe impairment exists, the Commissioner "will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

In the present case, the ALJ found that Matheney was severely impaired by valvular cardiomyopathy and obesity during the relevant period. (Tr. 14.) Matheney claims her aortic and mitral valve disease should also have been found to be severe. Even assuming Matheney is correct, the court finds that any error in this regard was harmless. The ALJ found that two conditions constituted severe impairments and then continued with the disability analysis. (*See* Tr. 14.) Thus, Matheney succeeded at step two. Further, the ALJ considered both her severe and nonsevere impairments when determining her RFC, as evidenced by his discussion of her moderate to severe mitral valve regurgitation and "severe aortic valve disease," which necessitated aortic valve replacement. (Tr. 14–16.) Therefore, Matheney's third claim of reversible error fails since it is "legally irrelevant" that the ALJ classified her aortic and mitral valve disease as nonsevere.

### 4. *RFC Assessment*

Matheney's final argument is that the ALJ erred by failing to include a function-by-function assessment of her RFC as required by 20 C.F.R. §§ 404.1545, 416.945, and explained in SSR 96-8p, 1996 WL 374184 (July 2, 1996). SSR 96-8p requires the ALJ to address a claimant's exertional and nonexertional capacities and "articulate how the evidence in the record supports

the RFC determination." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547–48 (6th Cir. 2002) (per curiam) (citation omitted); *see also Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014) (holding "that the ALJ complied with the applicable regulations by assessing each of [the claimant's] work-related limitations that were at issue"). Here, the record reflects that the ALJ complied with the applicable regulations by assessing each of Matheney's work-related limitations that were at issue and explaining how the record supported his findings. Further, although Matheney asserts that "the ALJ failed to include substantial limitations in the RFC finding correlating to symptoms and limitations which were well-documented in the record" (Docket No. 9-1, at 11–12), she neglects to identify any limitations unaccounted for by the ALJ. The court therefore finds that Matheney's final argument lacks merit.

## IV.    Conclusion

For the reasons stated above, the plaintiff's Motion for Judgment on the Record (Docket No. 9) will be denied and the decision of the Social Security Administration will be affirmed. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge